DECISION AND JUDGMENT ENTRY
Carlos Stephens appeals his conviction for breaking and entering in violation of R.C. 2911.13, possession of criminal tools in violation of R.C. 2923.24, and attempted theft in violation of R.C. 2923.02. Stephens asserts that the Pickaway County Court of Common Pleas erred by denying his motion to sever his trial from that of his co-defendant. We disagree because Stephens did not request a severance until the afternoon of the first day of trial and because Stephens was not prejudiced by the trial court's denial of his motion to sever. Stephens also asserts that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Because the evidence presented, if believed, could convince a rational trier of fact that the state proved all elements of the offenses charged beyond a reasonable doubt, and because the entire record, and all reasonable inferences therefrom, contains substantial evidence upon which one could reasonably conclude that the state proved all the elements of the offenses beyond a reasonable doubt, we disagree. Accordingly, we overrule Stephens' assignments of error and affirm the judgment of the trial court.
 I.
The Pickaway County Grand Jury indicted Carlos Stephens on charges of breaking and entering in violation of R.C. 2911.13, possession of criminal tools in violation of R.C. 2923.24, and attempted theft in violation of R.C. 2923.02. Stephens pled not guilty. The trial court joined Stephens trial with the trial of his co-defendant, David Elkins.
The undisputed evidence at trial revealed that several witnesses observed Stephens, Elkins and Gary Johnson riding in Stephens' car on the evening of June 21, 1998. As the three traveled north on U.S. Route 23, Stephens and Elkins discussed their need for money and the lighting at Northland Farm Equipment ("Northland.") They stopped in the Northland parking lot several times. On one of those occasions, Elkins exited Stephens' car and stepped up onto a nearby telephone pole.
Stephens and Elkins arranged for Johnson to drop them off at Northland around 3:00 a.m., and gave Johnson instructions to pick them up approximately one hour later on Radcliff Road, one-quarter mile south of Northland.
At 3:36 a.m., the security alarm at Northland activated. When police responded, they discovered that someone had broken in and ransacked Northland, particularly the area where the cash box is kept during business hours. The intruders left behind a pair of adjustable pliers and a spud bar, but, apparently unable to find the cash box, took nothing. The intruders also cut the telephone line.
Investigating officers observed Johnson driving around the area in Stephens' car, questioned him, and detained him. Police also discovered tracks from Northland running south along the railroad tracks toward Radcliff Road, and a shoe print at the telephone pole.
At approximately 5:00 a.m., police observed Stephens and Elkins walking south along the railroad tracks approximately one mile south of Radcliff Road. When police asked them to identify themselves, they ran. A police tracking dog discovered wire cutters discarded along Stephens and Elkins' route, and the cutters were consistent with those used to cut the telephone wire at Northland. Later that day, police caught Stephens and Elkins several miles further south along the railroad tracks.
The trial court joined Stephens and Elkins' trials without objections from either party. Johnson testified against Stephens and Elkins at the trial. Additionally, several witnesses corroborated various portions of Johnson's testimony. The state presented evidence that the shoe print lifted from the telephone pole matched Elkins' shoe. During the trial, Stephens moved to sever, arguing that the presence of physical evidence linking Elkins, but not him, to the crime resulted in a prejudicial joinder. The trial court denied Stephens' motion. Stephens did not renew his motion to sever after the state rested, and neither Stephens nor Elkins offered any evidence in their own defense. The jury returned verdicts of guilty against both Stephens and Elkins. The trial court sentenced Stephens on September 16, 1998.
Stephens filed a motion for a delayed appeal, which this court granted on March 31, 1999. Stephens asserts the following assignments of error:
 I. The trial court abused its discretion when it denied Appellant's motion for a separate trial based on prejudicial evidence presented by the state against the co-defendant.
 II. Defendant-Appellant was denied a fair trial because there was insufficient evidence to support the guilty verdict.
 II.
In his first assignment of error, Stephens asserts that the trial court abused its discretion by denying his motion to sever his trial from Elkins' trial. Stephens contends that, because the state presented physical evidence linking Elkins to the crime, the jury convicted Stephens based wholly upon his association with Elkins.
Crim.R. 8 (B) specifically permits joinder of multiple defendants when all defendants are alleged to have participated in the same act, transaction, or series of acts or transactions. Crim.R. 14 recognizes that the defendant may file a motion to sever properly joined trials, but the defendant bears the burden of showing that he is prejudiced by the otherwise proper joinder.
Crim.R. 12 (B) (5) provides that a motion to sever the trials of co-defendants pursuant to Crim.R. 14 must be raised prior to trial. If the defendant fails to timely file his motion, he waives his right to severance of his trial. Crim.R. 12 (G); Statev. Knight (1984), 20 Ohio App.3d 289, 291. Even when the defendant makes a timely pretrial motion to sever, the defendant must renew the unsuccessful motion at the close of evidence or waive all but plain error on appeal. State v. Walker (1990),66 Ohio App.3d 518, 522; State v. Brady (1988), 48 Ohio App.3d 41,44; State v. Owens (1975), 51 Ohio App.2d 132, 146.
An appellate court that reviews a proceeding for plain error must examine the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error did not occur. State v. Slagle (1992), 65 Ohio St.3d 597. The Supreme Court of Ohio has cautioned that "notice of plain error under Crim.R. 52 (B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
In this case, the trial court's decision to try Stephens and Elkins together was proper. The Pickaway County Grand Jury indicted Stephens and Elkins for the same series of actions, specifically, those acts associated with the breaking and entering at Northland.
Stephens did not request a separate trial until the trial had already commenced. Therefore, Stephen's request was untimely, and the trial court did not abuse its discretion by denying his motion pursuant to Crim.R 12 (B) (5). Additionally, Stephens did not renew his request for separate trials at the close of evidence. Therefore, he waived all but plain error.
Finally, Stephens failed to show that the result of his trial would have been different had the trial court granted his motion for separate trials. The evidence showed that Stephens and Elkins participated in the offenses together, and the evidence against both defendants involved the same witnesses, physical evidence, and testimony. Stephens has not shown that any evidence introduced during the joint trial would have been inadmissible if he had been tried separately. Under the circumstances, Stephens has failed to show any prejudice or that the result of his trial would have been different had he been tried separately.
Accordingly, we overrule Stephens' first assignment of error.
 III.
In his second assignment of error, Stephens contends that his conviction is not supported by sufficient evidence. Additionally, Stephens asserts that the jury verdict is against the manifest weight of the evidence. Specifically, Stephens asserts that no direct evidence links him to the breaking and entering at Northland and no direct evidence proves that the individuals who committed the breaking and entering attempted to steal property in excess of five hundred dollars.
 A.
The Ohio Supreme Court clearly outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 79-80; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Whether the evidence supporting Stephens' conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
In this case, the uncontroverted evidence admitted at trial showed that Stephens drove his automobile to Northland with Elkins and Johnson. Elkins and Stephens discussed the adequacy of the lighting at Northland and their need for money. Stephens and Elkins arranged for Johnson to drop them off at Northland, and gave Johnson instructions to pick them up one hour later on Radcliff Road, one-quarter mile south of Northland.
After the security alarm at Northland activated, police discovered that someone had broken into and ransacked Northland, leaving behind a pair of adjustable pliers and a spud bar. Police questioned Johnson, who was driving in the area in Stephens' car. Police also discovered tracks from Northland running south toward Radcliff Road. Along that route, police observed Stephens and Elkins running from police. A police dog also discovered wire cutters discarded along Stephens and Elkins' route that were consistent with those used to cut the telephone wire at Northland.
After reviewing the evidence, we find that any rational finder of fact could have found that the state proved all essential elements of the offenses charged. Specifically, we find that the record contains circumstantial evidence indicating that Stephens broke into Northland and attempted to steal a cash box that he believed could contain over five hundred dollars. Accordingly, we find that Stephens' conviction is supported by sufficient evidence.
 B.
Stephens also asserts that his conviction is contrary to the manifest weight of the evidence. Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v.Banks (1992), 78 Ohio App.3d 206, 214; State v. Martin (1983),20 Ohio App.3d 172, 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71; State v. Martin, 20 Ohio App.3d at 175.
In this case, upon reviewing the entire record, as summarized above, weighing the evidence and all reasonable inferences therefrom, and considering the credibility of the witnesses, we find that the jury did not lose its way or create a manifest miscarriage of justice in returning a guilty verdict. Therefore, we find that Stephens' conviction should not be reversed and that Stephens is not entitled to a new trial.
Stephens' conviction is supported by sufficient evidence and is not contrary to the manifest weight of the evidence. Accordingly, we overrule Stephens' second assignment of error.
 IV.
In conclusion, we find that the trial court did not err by denying Stephens' motion for separate trials. Additionally, we find that Stephens' conviction is supported by sufficient evidence and is not contrary to the manifest weight of the evidence. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.: Concurs in Judgment and Opinion.
For the Court
 BY: _________________ Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.