OPINION
{¶ 1} Appellant, Robert E. Singleton ("Singleton"), appeals from his convictions on three counts of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), fourth degree felonies; three counts of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), second degree felonies; three counts of sexual battery in violation of R.C. 2907.03(A)(5), third degree felonies; and two counts of rape in violation of R.C. 2907.02(A)(1)(b), first degree felonies.[1] Appellant also challenges the trial court's judgment labeling him a sexual predator. We affirm.
 {¶ 2} Singleton is the father of Kimberly Singleton Yost ("Kimberly") and Theresa Singleton ("Theresa"). Kimberly was fifteen and Theresa was ten at the time of the incidents that form the basis of Singleton's convictions.
 {¶ 3} Singleton, his wife Brenda, and the children lived at 802 Liberty Street, Painesville Township. Singleton and Brenda divorced and Singleton, Kimberly, and Theresa continued to live at 802 Liberty Street.
 {¶ 4} Kimberly and Theresa then moved in with their aunt and uncle, Marcia and Sam Loudin. This living arrangement continued for several months until Kimberly was caught with marijuana in her book bag. Kimberly and Theresa then resumed living with Singleton.
 {¶ 5} At this time, Kimberly and Theresa began sleeping in the same bed with Singleton. This sleeping arrangement started because Singleton's room had a television and was warmer than the rest of the house. During this time, Singleton fondled Kimberly.
 {¶ 6} Kimberly moved out of her father's house when she was sixteen and moved in with her boyfriend, Tim Nelson, and his parents. Singleton then began living at his Concord Auto Body Shop ("the shop"). Theresa stayed with Singleton at the shop on several occasions. Theresa testified that it was during this time that Singleton raped her. Kimberly was twenty and Theresa was fifteen at the time of trial.
 {¶ 7} Singleton had severe alcohol and drug problems. Kimberly, Theresa, and Kimberly's friends testified that Singleton provided them with marijuana and cocaine and that they used these drugs with Singleton both at his residence on Liberty Street and at the auto body shop.
 {¶ 8} Allegations about Singleton's conduct eventually became known and Singleton was the subject of a thirteen count secret indictment. Singleton was tried by jury and convicted on eleven counts as set forth above. The trial court sentenced Singleton to two concurrent life sentences for his rape convictions; three concurrent three year sentences for his sexual battery convictions, with these sentences to be served consecutive to the rape sentences; three consecutive five year sentences for corrupting another with drugs, to wit: cocaine, with these sentences to be served consecutive to the rape sentences; and three concurrent one year terms for corrupting another with drugs, to wit: marijuana, with these sentences to be served concurrent to the sentences for corrupting another with cocaine. After conducting a hearing, the trial court found Singleton to be a sexual predator.
 {¶ 9} Singleton appeals from the judgment of the trial court and sets forth seven assignments of error for our review:
 {¶ 10} "[1.] The appellant being found guilty by the jury was against the manifest weight of the evidence.
 {¶ 11} "[2.] The trial court erred when it failed to instruct the jury on blackout and recklessness.
 {¶ 12} "[3.] The trial court erred to the prejudice of appellant in not permitting defense counsel to cross-examine the victim as to prior false rape accusations.
 {¶ 13} "[4.] The trial court committed reversible error when it labeled appellant a sexual predator against the manifest weight of the evidence.
 {¶ 14} "[5.] The trial court erred to the prejudice of appellant in failing to follow the procedural requirements of Revised Code Section 2950.09.
 {¶ 15} "[6.] The appellant was denied his constitutional right to a fair and impartial trial due to the misconduct of the prosecuting attorney and then by the trial court denying appellant's motion for a mistrial.
 {¶ 16} "[7.] The appellant was denied the effective assistance of counsel as defense counsel's actions and omissions deprived appellant of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I section X of the Ohio Constitution."
 {¶ 17} In his first assignment of error, Singleton contends that his convictions were against the manifest weight of the evidence.
 {¶ 18} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
 {¶ 19} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." (Internal citations and emphasis omitted.) State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.
 {¶ 20} When determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. We will exercise this discretionary power only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 21} Singleton first argues that the testimony of David Green ("Green"), a criminalist at the Lake County Crime Lab, failed to establish that the substances he provided to the children were in fact marijuana and cocaine. Thus, Singleton's argument presents an issue of sufficiency of the evidence,[2] and manifest weight. Green testified that he was not provided any substances on which to perform tests and that without such tests he could not conclude that a substance was marijuana or cocaine.
 {¶ 22} The state is not required to present expert scientific testimony to establish that a substance is in fact a controlled substance. In State v. McKee, 91 Ohio St.3d 292, 2001-Ohio-41, syllabus, the Ohio Supreme Court held that "[t]he experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established."
 {¶ 23} The state presented the testimony of Tim Nelson, Paula Baker, Kelly Nasca, Devin Williams, Kimberly, and Theresa. All of these individuals testified that they had used marijuana or cocaine before receiving it from Singleton; all testified as to the effects of such drugs; all testified as to the appearance of such drugs; and all testified that Singleton had provided them with the substances and that they had witnessed Singleton provide the substances to Kimberly and Theresa. Thus, there was sufficient evidence to support the jury's verdicts and we cannot say that the jury's verdicts finding Singleton guilty under R.C.2925.02(A)(4)(a),[3] were against the manifest weight of the evidence.
 {¶ 24} Singleton next argues that the verdict convicting him of sexual battery under R.C. 2907.03(A)(5)[4] against Kimberly was against the manifest weight of the evidence. Specifically, Singleton points to inconsistencies in Kimberly's testimony about the frequency of the sexual contact between her and her father.
 {¶ 25} While there was some inconsistency in Kimberly's testimony as to the frequency of the contact, Kimberly never wavered from her the contention that her father engaged in sexual conduct and contact with her. The incidents at issue happened over an extended period and several years before the trial of this case. Therefore, it is not surprising that Kimberly would have difficulty recalling the exact details of the incidents. Singleton also makes much of the fact that Kimberly did not report the incidents sooner. However, the testimony makes clear that both Kimberly and Theresa loved their father and wanted to protect him. The state also presented testimony to show that Kimberly feared her father and the consequences of reporting the activity. The verdicts convicting Singleton of sexual battery were not against the manifest weight of the evidence.
 {¶ 26} Singleton also contends that his convictions for rape under R.C. 2907.02(A)(1)(b)[5] are against the manifest weight of the evidence. Singleton points to inconsistencies in Theresa's testimony as to whether Singleton used a condom, whether the sex acts made her uncomfortable, and whether she voluntarily engaged in sexual acts with Singleton.
 {¶ 27} There were inconsistencies in Theresa's testimony; however, once the incidents came to light she never stated that Singleton did not commit these acts. Further, the testimony makes clear that Theresa feared angering her father and sought his approval. This explains her reluctance to admit the conduct and her "independent" decision to engage in sexual acts with her father.
 {¶ 28} Finally, under this assignment of error, Singleton argues that there was no evidence that he compelled Theresa to submit by force.[6] We disagree.
 {¶ 29} R.C. 2901.01(A)(1) defines force as, "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The Ohio Supreme Court has held that:
 {¶ 30} "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus.
 {¶ 31} In State v. Dye, 82 Ohio St.3d 323, 1998-Ohio-234, the defendant was convicted of the rape of a nine-year old boy. The victim testified that Dye, a family friend, said he would not be the victim's friend if the victim told someone about the abuse. The victim's mother had also told the victim that he was to mind the defendant and the defendant told the victim to keep the abuse a secret. The Ohio Supreme Court found this sufficient evidence of force to satisfy R.C. 2907.02(B). The Court stated:
 {¶ 32} "Clearly, a child cannot be found to have consented to rape. However, in order to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires that some amount of force must be proven beyond that force inherent in the crime itself. Yet force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. In fact, R.C. 2907.02(B) requires only that minimal force or threat of force be used in the commission of the rape." (Internal quotations and citations omitted.) Id. at 327-328.
 {¶ 33} Here, the evidence established that Theresa feared Singleton and that she sought his approval. Theresa also testified that Singleton made her swear on the Bible that she would not tell anyone what had happened. The state presented evidence that Theresa had a learning disability. The state also presented testimony that on one occasion when Theresa refused to have sex with Singleton he became angry and ignored her until Theresa agreed to have sex with him. Thus, we cannot say that the findings that Singleton compelled Theresa to submit by force or threat of force are against the manifest weight of the evidence.
 {¶ 34} After reviewing the records and considering the credibility of the witnesses, we cannot say that Singleton's convictions were against the manifest weight of the evidence. Singleton's first assignment of error is without merit.
 {¶ 35} In his second assignment of error Singleton argues that the trial court erred by failing to instruct the jury on the affirmative defense of blackout on the sexual battery charge and by failing to instruct the jury that it was required to find that he acted recklessly to convict him for sexual battery. We disagree.
 {¶ 36} As a general rule, a trial court commits prejudicial error in a criminal case when it fails to give a proposed instruction when the instruction is relevant to the facts of the case, the instruction gives a correct statement of the relevant law, and the instruction is not covered in the general charge to the jury. Mentor v. Hammercheck (1996), 112 Ohio App.3d 291,296. Blackout is an affirmative defense that must be proved by a preponderance of the evidence. State v. LaFreniere (1993),85 Ohio App.3d 840, 848. Here Singleton argues that he presented sufficient evidence to entitle him to an instruction on blackout.
 {¶ 37} R.C. 2901.21(A) provides in relevant par:
 {¶ 38} "* * * a person is not guilty of an offense unless both of the following apply:
 {¶ 39} "* * *
 {¶ 40} "(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense."
 {¶ 41} Subsection (D)(2) provides:
 {¶ 42} "As used in this section:
 {¶ 43} "* * *
 {¶ 44} "(2) Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts."
 {¶ 45} Ohio's "blackout" instruction provides:
 {¶ 46} "Where a person commits an act while unconscious as in a (coma) (blackout) (convulsion) due to (heart failure) (disease) (sleep) (injury), such act is not a criminal offense even though it would be a crime if such act were the product of a person's (will) (volition)." 4 Ohio Jury Instructions (1989) 60, Section 409.05.
 {¶ 47} Singleton presented evidence that he abused alcohol on a regular basis and that he suffered blackouts as a result. However, he failed to present evidence that he was blacked out at the time he committed sexual battery. Evidence that a person was prone to abuse alcohol to the point of blackout is insufficient to warrant a jury instruction on this affirmative defense. There must be some evidence that the defendant was suffering from blackout at the time he committed the offense to warrant an instruction. LaFreniere, at 848, (stating, "[i]n the majority of cases in which blackout has been invoked, the defendant has attempted to establish that he was unconscious at the time the act was committed.) See, also, State v. Cutlip (June 15, 2001), 11th Dist. No. 99-L-149, 2001 WL 687493, at 6. Therefore, the trial court did not err in refusing to instruct on blackout.
 {¶ 48} Singleton next argues that the trial court erred when it refused to instruct the jury that, to convict him on the charge of sexual battery, the state was required to prove that he acted recklessly. We disagree.
 {¶ 49} R.C. 2907.03(A)(5) states:
 {¶ 50} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 51} "* * *
 {¶ 52} "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."
 {¶ 53} R.C. 2901.21(B) states:
 {¶ 54} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 55} R.C. 2907.03(A)(5) does not specify any degree of culpability; therefore, we must determine whether it plainly indicates a purpose to impose strict liability. We hold that it does.
 {¶ 56} R.C. 2907.03(A)(1)-(4) states that liability is premised on the actor knowingly committing an act. The remaining subsections, five through eleven, do not specify any degree of culpability.[7] A review of the latter show that they are designed to protect those under the direct control or supervision of another, i.e., children and their parents, hospital or institutional patients, students. It seems clear that the legislature intended to impose strict liability in these instances to protect the most vulnerable members of society.
 {¶ 57} Further, because R.C. 2907.03(A)(5) requires the jury to find that specific factual conditions exist, i.e., immediate kinship, the legislature made clear its intent to impose strict liability. Finally, the statute is not ambiguous so we are not required to interpret it strictly against the state. Therefore, the trial court did not err when it failed to instruct the jury that the state was required to prove that Singleton acted recklessly. State v. Hannah (June 10, 1986), 10th Dist. No. 85AP-896, 1986 WL 6682. Appellant's second assignment of error is without merit.
 {¶ 58} In his third assignment of error, Singleton argues that the trial court erred by failing to let him cross-examine Theresa regarding a prior, allegedly false, rape accusation. We find no error.
 {¶ 59} During cross-examination, Singleton's attorney asked Theresa if she had ever made any false accusations of sexual activity. Theresa said she had not. The state objected and following a sidebar the court instructed the jury as follows:
 {¶ 60} "Ladies and gentlemen, the last question that was asked of the witness regarding whether she had made a false accusation of sex was an inappropriate question and you are to disregard the question and answer. You may not use it for any purpose in your deliberations."
 {¶ 61} Singleton argues that the trial court erred in prohibiting him from following up on Theresa's response and instructing the jury that the question was inappropriate.
 {¶ 62} The decision to admit or exclude evidence lies within the sound discretion of the trial court. We will reverse the trial court only when there has been an abuse of that discretion.State v. Brazzon, 11th Dist. No. 2001-T-0050, 2003-Ohio-6088. At ¶ 13.
 {¶ 63} In State v. Boggs (1992), 63 Ohio St.3d 418, the Ohio Supreme Court held:
 {¶ 64} "Where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, cross-examination on the accusation would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into pursuant to Evid.R. 608(B)." Id. at paragraph two of the syllabus.
 {¶ 65} Assuming there is a good faith basis for the question, a defendant may ask a victim if he or she has made prior false accusations of sexual activity. Only if the victim responds affirmatively is the court required to conduct an in camera hearing to determine if the prior instances involved sexual activity. Therefore, Singleton's question was proper and the trial court should not have admonished the jury to disregard it. We now must determine whether this error prejudiced Singleton.
 {¶ 66} Singleton argues that the trial court's admonition resulted in prejudice because the jury was led to believe that his counsel had done something improper. We find the error to be harmless.
 {¶ 67} Through this line of questioning Singleton was attempting to show that Theresa's testimony was not credible. Theresa admitted during cross-examination that she had not been honest when investigators had initially questioned her about Singleton's abuse. Further, Kimberly testified that Theresa was not always honest. Given this testimony, we find any error in the admonition to the jury to have been harmless. Appellant's third assignment of error is without merit.
 {¶ 68} In his fourth assignment of error, Singleton argues that the trial court's judgment labeling him a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 69} For an offender to be adjudicated a sexual predator, the trial court must find, by clear and convincing evidence, that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E)(1). See, also,State v. Eppinger, 91 Ohio St.3d 158, 163, 2001-Ohio-247.
 {¶ 70} When reviewing a sexual predator adjudication we must examine the record and determine whether the trier of fact had before it sufficient evidence to satisfy the burden of proof.State v. Stillman (Dec. 22, 2000), 11th Dist. No. 2000-L-015, 2000 WL 1876573, at 1, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 71} In the instant case, Singleton does not challenge the trial court's finding that he has been convicted of a sexually oriented offense. He challenges the second prong of the test, i.e., the trial court's determination that he is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 72} The Revised Code sets forth factors the trial court is to consider in determining whether an offender is likely to re-offend. These factors are: the offender's age; the victim's age; whether the offense involved multiple victims; whether the offender used drugs or alcohol to impair the victim of the offense or to prevent the victim from resisting; if the offender has previously been convicted of or pled guilty to a criminal offense, whether the offender completed the sentence imposed and, if the prior offense was a sex offense, whether the offender participated in programs available for sex offenders; any mental illness or mental disability of the offender; the nature of the sexual conduct with the victim and whether it was part of a demonstrated pattern of abuse; whether, during the commission of the offense, the offender displayed cruelty or made one or more threats of cruelty; and any additional behavioral characteristics that contribute to the offender's conduct. Eppinger at 164.
 {¶ 73} The state presented evidence that established that the victims were minors, that there were multiple victims, that Singleton used alcohol and drugs to impair the victims, that Singleton had a record of misdemeanor convictions for domestic violence and drug and alcohol offenses, that Singleton showed traits of pedophilia, psychopathy, personality disorder, and polysubstance abuse, that the conduct involved a pattern of abuse, and that Singleton displayed cruelty by verbal and physical intimidation.
 {¶ 74} This evidence establishes by clear and convincing evidence that Singleton is likely to re-offend. Singleton's fourth assignment of error is without merit.
 {¶ 75} In his fifth assignment of error Singleton argues that the trial court failed to follow the procedure set forth in R.C.2950.09. We disagree.
 {¶ 76} R.C. 2950.09(B)(2) provides in relevant part:
 {¶ 77} "* * * At the hearing, the offender * * * and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender * * * is a sexual predator. The offender * * * shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender * * *."
 {¶ 78} Singleton argues that he was not provided an expert witness and that he was not permitted to cross-examine the state's expert as required by the statute. The record does not indicate that Singleton requested that an expert witness be appointed for him, therefore, he has waived this argument. Further, the record reveals that Singleton was afforded the opportunity to call witnesses on his behalf. He declined to exercise his right to do so and stipulated to the report of the state's expert. Therefore, we conclude that the trial court followed the procedure set forth in R.C. 2950.09 and Singleton's fifth assignment of error is without merit.
 {¶ 79} In his sixth assignment of error, Singleton contends that he was denied his right to a fair and impartial trial due to prosecutorial misconduct. We disagree.
 {¶ 80} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14. We have held that:
 {¶ 81} "` * * * Unless the statement made by the prosecutor in argument to a jury is so misleading or untruthful that the defendant's rights are prejudiced, which deprives him of a fair and impartial trial, the claimed error cannot be considered prejudicial. In addition, in order to consider whether a prosecutor's statement in argument to a jury is prejudicial, one must consider the cumulative effect of the comments made to the jury.'" State v. Daugert (June 29, 1990), 11th Dist. No. 89-L-14-091, 1990 WL 94835, at 2, quoting State v. Muscatello
(1977), 57 Ohio App.2d 231, at 253-254.
 {¶ 82} Singleton initially argues that the prosecutor made improper references to his poor parenting skills. We have reviewed the allegedly improper statements and find them to be fair characterizations of the evidence presented.
 {¶ 83} Singleton also argues that the prosecution misquoted Theresa's testimony and that this amounted to prosecutorial misconduct. During closing argument, the prosecutor quoted Theresa as testifying that Singleton had told Theresa, "I want you to look me in the eye and tell me that I did these things to you and then I want you to lie about it." Singleton objected. The court and counsel then reviewed Theresa's testimony and determined that the prosecutor had misquoted Theresa's testimony. The court then gave the following instruction to the jury:
 {¶ 84} "During closing argument, the Prosecutor stated the testimony of Theresa Singleton `when you come into Court, I want you to look me in the eye and tell me I did these things to you and then I want you to lie about it.'
 {¶ 85} "The testimony reflected by the Court transcript states `when he takes me to Court he is going to look me straight in the eye and ask me what I say is true and tell me I am lying.'
 {¶ 86} "You are to disregard the above statement of the prosecutor as stated in closing argument and determine for yourselves the value of the testimony given."
 {¶ 87} While the prosecutor clearly misquoted Theresa's testimony, we fail to see how this resulted in prejudice to Singleton. The trial court corrected the error by instructing the jury to disregard the misstatement of the prosecutor and by providing the jury with a correct statement of Theresa's testimony.
 {¶ 88} Singleton also argues that the trial court erred in denying his motion for a mistrial based on prosecutorial misconduct. For the reasons discussed above, we find that the trial court did not err in denying Singleton's motion for mistrial. Appellant's sixth assignment of error is without merit.
 {¶ 89} In his final assignment of error, Singleton argues that he was denied effective assistance of counsel. We disagree.
 {¶ 90} When we review an ineffective assistance claim, the benchmark is, "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v.Washington (1984), 466 U.S. 668, 686. To prevail on his claim of ineffective assistance, Singleton must show that his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment." Id. at 687. He must also show prejudice resulting from the deficient performance. Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Singleton must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We presume that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 189. See, also, State v. Bradley (1989),42 Ohio St.3d 136, at paragraphs two and three of the syllabus.
 {¶ 91} We need not address the two prongs of appellant's ineffective assistance claim in the order set forth inStrickland.
 {¶ 92} "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."Strickland, at 697.
 {¶ 93} Singleton first argues that his trial counsel was ineffective because he failed to raise the affirmative defense of blackout. As discussed above, Singleton's trial counsel did seek an instruction on the affirmative defense of blackout but the trial court properly denied this instruction.
 {¶ 94} Singleton also argues that his counsel was ineffective because he failed to present evidence at Singleton's sexual predator hearing. The record in this case establishes by clear and convincing evidence that the trial court properly labeled Singleton a sexual predator. Singleton argues that had his counsel retained an expert and presented evidence, `the classification could have been different." (Emphasis added.) However, Singleton is required to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. He has not done so.
 {¶ 95} Finally, Singleton's counsel stipulated only to the admissibility of the state's expert report, not to labeling Singleton a sexual predator. Singleton's counsel argued those points of the state's expert report that indicated that Singleton was not likely to re-offend. Singleton has not demonstrated that he suffered prejudice because of his counsel's performance and his seventh assignment of error is without merit.
 {¶ 96} The judgment of the Lake County Common Pleas Court is affirmed.
Ford, P.J., concurs.
O'Neill, J., dissents with dissenting. opinion.
[1] Singleton was indicted on two additional charges: one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third degree felony; and one count of rape in violation of R.C.2907.02(A)(1)(b), a first degree felony. These charges were dismissed at trial.
[2] "Sufficiency" is a term of art meaning the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Id. at 386. Sufficiency is a test of adequacy. Id. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. See, also, Crim.R. 29(A).
[3] R.C. 2925.02(A)(4)(a) provides:
{¶ a} "(A) No person shall knowingly do any of the following:
{¶ b} "* * *
{¶ c} "(4) By any means, do any of the following:
{¶ d} "(a) Furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard; * * *."
[4] R.C. 2907.03(A)(5) provides:
{¶ a} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
{¶ b} "* * *
{¶ c} "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."
[5] R.C. 2907.02(A)(1)(b) provides:
{¶ a} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
{¶ b} "* * *
{¶ c} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
[6] R.C. 2907.02(B) provides in relevant part:
"Whoever violates this section is guilty of rape, a felony of the first degree. * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force * * * whoever violates division (A)(1)(b) of this section shall be imprisoned for life." Thus, the jury was not required to find that appellant forcibly raped Theresa, to convict appellant of rape. R.C. 2907.02(A)(1)(b). The finding of force served to enhance appellant's sentence.
[7] R.C. 2907.03(A) states:
{¶ a} "No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
{¶ b} "(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.
{¶ c} "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.
{¶ d} "(3) The offender knows that the other person submits because the other person is unaware that the act is being committed.
{¶ e} "(4) The offender knows that the other person submits because the other person mistakenly identifies the offender as the other person's spouse.
{¶ f} "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.
{¶ g} "(6) The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person.
{¶ h} "(7) The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school.
{¶ i} "(8) The other person is a minor, the offender is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the other person is enrolled in or attends that institution.
{¶ j} "(9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.
{¶ k} "(10) The offender is a mental health professional, the other person is a mental health client or patient of the offender, and the offender induces the other person to submit by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes.
{¶ l} "(11) The other person is confined in a detention facility, and the offender is an employee of that detention facility."